## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

KELLY LA GALE MCSEAN,       )
          )
       Plaintiff,       )
          )
     v.            )      Case No. 4:25-cv-01102-ACL
          )
ST. FRANCOIS COUNTY DETENTION   )
CENTER, *et al.*,        )
          )
       Defendants.     )

## MEMORANDUM AND ORDER

Self-represented Plaintiff Kelly La Gale McSean[1] brings this action under 42 U.S.C. § 1983 for alleged violations of her civil rights which occurred while she was in the custody of the St. Francois County Detention Center.  The matter is now before the Court upon the motion of Plaintiff for leave to proceed *in forma pauperis*, or without prepayment of the required filing fees and costs.  [Doc. 2].  Having reviewed the motion and the financial information submitted in support, the Court will grant the motion and assess an initial partial filing fee of $24.75.  *See* 28 U.S.C. § 1915(b)(1).  As Plaintiff is now proceeding *in forma pauperis*, the Court must review her complaint under 28 U.S.C. § 1915.  Based on such review, the Court will dismiss this case for failure to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915(e)(2)(b).

### Initial Partial Filing Fee

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee.  If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an

---

[1] Plaintiff identifies as a trans-woman and uses female pronouns.  *See* [Doc. 1 at 6].  She was formerly known as 'Larry J. Bemboom,' but she legally changed her name in October 2021.  *See In re Larry J. Bemboom*, No. 21SF-DR00274 (24th Jud. Cir., St. Francois Cnty.).

initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period.  After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account.  28 U.S.C. § 1915(b)(2).  The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid.  *Id.*

Plaintiff is a convicted and sentenced state prisoner incarcerated at the Eastern Reception, Diagnostic & Correctional Center (ERDCC).  [Doc. 1 at 2].  In support of her motion to proceed without prepaying fees and costs, Plaintiff submitted an inmate account statement showing average monthly deposits of $123.75 and an average monthly balance of $43.96 (as of the twelfth of each month).  [Doc. 3].  The Court finds that Plaintiff has insufficient funds in her prison account to pay the entire fee and will therefore assess an initial partial filing fee of $24.75, which is twenty percent of Plaintiff's average monthly deposit.  *See* 28 U.S.C. § 1915(b)(1).

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework.  *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir.

2015).  However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law.  *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

## Background

### I.    Plaintiff's State Court Criminal History

Some background on Plaintiff's history with the Missouri Department of Corrections (MDOC) is helpful for understanding Plaintiff's allegations in this case and their relation to her numerous other pending cases.  Plaintiff was placed into the custody of MDOC in 2003, after she pled guilty on November 17, 2003, to felony sexual assault and deviate sexual assault, and received a five (5) year sentence.  *State v. Bemboom*, No. 03CR169024-01 (13th Jud. Cir., Boone Cnty.).  Before her release, a Missouri Probate Court matter was opened on August 22, 2008, seeking to have Plaintiff classified as a sexually violent predator under Missouri law due to her history as a sex offender.  *In re Larry Bemboom*, No. 08B7-PR00260 (13th Jud. Cir., Boone

Cnty.).  After a jury trial, Plaintiff was classified as a sexually violent predator on August 7, 2009.  *Id*.

According to the 'Annual Report of Mental Condition,' dated October 31, 2019 and submitted in the probate matter, Plaintiff arrived at the Sex Offender Rehabilitation and Treatment Services (SORTS) facility in Farmington, Missouri, on or about April 1, 2009, before the probate judgment was final.  Later, she was transferred to the SORTS facility in Fulton, Missouri.  On July 14, 2014, Plaintiff was convicted of second-degree assault for attacking a staff member at the Fulton SORTS program.  She was sentenced to seven (7) years' imprisonment with MDOC.  *State v. Bemboom*, No. 14CW-CR00632-01 (13th Jud. Cir., Callaway Cnty.).  In January 2019, Plaintiff was released from MDOC and readmitted to the SORTS program in Farmington.

Based on court records, it appears that Plaintiff had difficulty readjusting to the SORTS program.  Between April 2019 and November 2022, Plaintiff was criminally charged six (6) times in St. Francois County Court with attacking a Department of Mental Health (DMH) employee, attacking another civil detainee, or destruction of DMH property.  *State v McSean*, No. 19SF-CR00730-01 (24th Jud. Cir.); *State v. McSean*, No. 20SF-CR01462-01 (24th Jud. Cir.); *State v. McSean*, No. 20SF-CR01611-01 (24th Jud. Cir.); *State v. McSean*, No. 22SF-CR00497-01 (24th Jud. Cir.); *State v. McSean*, No. 22SF-CR00973-01 (24th Jud. Cir.); *State v. McSean,* No. 22SF-CR01035 (24th Jud. Cir.).

After pleading guilty to misdemeanor assault in the fourth degree for attacking a DMH employee at SORTS in November 2022, Plaintiff was transported to the St. Francois County Jail for a ninety (90) day sentence of imprisonment.  *State v. McSean*, No. 20SF-CR01611-01 (24th Jud. Cir.).  On January 17, 2023, Plaintiff escaped from the St. Francois County Jail.  She was apprehended three (3) days later in Ohio and charged with felony escape from confinement.  In

- 4 -

February 2025, Plaintiff was sentenced to four (4) years' incarceration for the escape. *State v. McSean*, No. 23SF-CR00017-01 (24th Jud. Cir.).

Around that same time in February 2025, Plaintiff's defense attorney filed a notice of intent to rely on the defense of mental disease or defect in one of Plaintiff's pending criminal cases. *State v. McSean,* No. 22SF-CR01035 (24th Jud. Cir.). As a result, in July 2025, a mental examination of Plaintiff for competency was ordered, and in August 2025, Plaintiff's case was suspended while Plaintiff awaited the exam. According to court records, as of December 21, 2025, Plaintiff had received the exam, but the court is still awaiting the mental examiners report. Plaintiff has a state court hearing scheduled for January 22, 2026. *Id.*

## II.    Plaintiff's Other Litigation in Federal Court

Plaintiff has filed numerous cases in federal court, under her current name and former name (Larry Bemboom), dating back to 2008. *See Bemboom v. Dunn*, No. 2:08-cv-00067-JCH (E.D. Mo. filed Dec. 22, 2008) (dismissed on Dec. 15, 2009, after summary judgment granted to defendants); *Bemboom v. Martin-Forman*, No. 2:13-cv-4168-FJG (W.D. Mo. filed June 14, 2013) (dismissed June 24, 2013, for failure to state a claim); *Bemboom v. Heyer*, No. 2:14-cv-4129-BCW (W.D. Mo. filed May 1, 2014) (dismissed on June 3, 2014, for failure to state a claim and frivolity).

As of the date of this Order, Plaintiff has six (6) other open civil cases pending in this Court. Her oldest pending case, filed in July 2023, names defendants associated with SORTS and the DMH, and alleges claims of equal protection and deliberately indifferent medical care. *McSean v. Hacker*, No. 4:23-cv-00878-JSD (E.D. Mo.). In August and September 2023, Plaintiff filed five (5) civil actions—four (4) of which are still pending—that, like this case, are regarding her treatment while confined at the St. Francois County Jail/Detention Center. *See McSean v. Bullock*, No. 4:23-cv-01072-HEA (E.D. Mo. filed Aug. 24, 2023) (alleging due

process violations regarding a January 2023 disciplinary segregation hold with no issuance of a conduct violation or hearing); *McSean v. Bainbridge*, No. 4:23-cv-01086-CDP (E.D. Mo. filed Aug. 28, 2023) (alleging First Amendment retaliation after Plaintiff filed a grievance regarding the Jail's denial of her request to purchase female undergarments); *McSean v. Bullock*, No. 4:23-cv-01174-JMB (E.D. Mo. filed Sept. 18, 2023) (alleging denial of, and improper treatment for, gender dysphoria; defamation of character; and emotional abusive with regard to the exercise of transgender rights); *McSean v. Chamberlain*, No. 4:23-cv-01225-CMS (E.D. Mo. filed Sept, 29, 2023) (alleging Fourth Amendment violation regarding a strip search). Finally, more recently in August 2025, Plaintiff filed a case against a St. Francois Jail employee, who she alleges yelled at her for repeatedly requesting female undergarments. *McSean v. Lemons*, No. 4:25-cv-01314-SPM (E.D. Mo. filed Aug. 29, 2025).

### The Complaint

Although Plaintiff is currently detained at ERDCC—a MDOC facility in Bonne Terre, Missouri—like many of her other pending civil cases in this Court, this case asserts violations which occurred while Plaintiff was held at the St. Francois County Jail/Detention Center. [Doc. 1 at 1-8]. Plaintiff brings this action under 42 U.S.C. § 1983, alleging violations of her civil rights against six (6) defendants: (1) St. Francois County Detention Center; (2) Brandy Unknown (Head Cook); (3) Christina Rayoum (lieutenant/deputy sheriff); (4) Katie Harris (nurse); (5) Randy Camden (lieutenant/jail administrator); and (6) Hardy White (lieutenant/general coordinator). [*Id.* at 1-5]. Plaintiff names the five (5) individual defendants in both their individual and official capacities. [*Id.*] For relief, Plaintiff seeks compensatory, nominal, and punitive damages. [*Id.* at 9].

Plaintiff alleges that her rights under the First, Eighth, and Fourteenth Amendments were violated by defendants, including her:

A) Right to Redress,
B) Freedom of Speech,
C) The Equal Protection Clause,
D) Cruel and Unusual Punishment,
E) Intentional Infliction of Emotional Distress (IIED),
F) Inadequate medical attention/malpractice,
G) mental capacity exacerbation – mental health,
H) discrimination,
I) failure to train, supervise, & discipline [and]
J) Due Process Clause[.]

[*Id.* at 8].

    As best the Court can decipher, these alleged violations are based on two unrelated

events: (1) Plaintiff's placement on an undesired "cardiac diet" due to hypertension and (2)

limitations placed on Plaintiff's ability to file grievances at the St. Francois Detention Center.[2]

## I.    Cardiac Diet

    According to Plaintiff, she began taking medication (Amlodipine) daily for hypertension

(or high blood pressure) in August 2021.  [*Id.* at 6].  Sometime around December 17, 2023,

Plaintiff requested to discontinue the medication.  [Doc. 1-1 at 4].[3]  In response to the request,

---

[2] Plaintiff also complains about many issues that are before the Court in her other pending cases.  For example, she cites to her pending case, *McSean v. Bainbridge*, and mentions an "ongoing problem" related to the refusal of county officials to allow her female undergarments.  [Doc. 1 at 7].  She also attached a grievance filing related to this issue, and a grievance complaining about the lack of treatment for gender dysphoria generally.  [Doc. 1-1 at 8, 10].  Plaintiff also mentions retaliation and harassment regarding her gender.  [Doc. 1 at 7-8].  As discussed above, all these issues are already being litigated in other civil actions pending in this Court.  *See McSean v. Bainbridge*, No. 4:23-cv-01086-CDP (E.D. Mo. filed Aug. 28, 2023); *McSean v. Bullock*, No. 4:23-cv-01174-JMB (E.D. Mo. filed Sept. 18, 2023).

To the extent Plaintiff is trying to bring another case in this Court raising the same issues currently pending in her other civil litigation, the Court warns Plaintiff that she cannot split her cause of action.  *See Friez v. First Am. Bank & Tr. of Minot*, 324 F.3d 580, 581 (8th Cir. 2003) ("Res judicata prevents the splitting of a single cause of action and the use of several theories of recovery as the basis for separate lawsuits."); *Bankers Life & Cas. Co. v. Kirtley*, 338 F.2d 1006, 1011 (8th Cir. 1964) (discussing how a party "cannot split his cause of action … and that res judicata would preclude recovery for any further damages based upon the same cause of action."); *Guettel v. U.S.*, 95 F.2d 229, 230-31 (8th Cir. 1938) (discussing how a party cannot "split up their claim … and prosecute it piecemeal or to present in their first suit only a portion of the grounds upon which they base their claim … and leave another ground or other grounds to be presented in a subsequent action.")  Allegations raised in the instant complaint that pertain to issues already pending in Plaintiff's other actions will not be considered or discussed herein.

[3] In assessing whether a complaint sufficiently states a valid claim for relief, courts may consider materials that are attached to the complaint as exhibits.  *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (citations omitted); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Plaintiff received a letter from a nurse Katie[4]—presumably defendant Katie Harris—explaining what hypertension is, why it is necessary to treat, potential complications of nontreatment, and why Plaintiff needs treatment based on her blood pressure and BMI.  [*Id.* at 1, 4-5].  The letter ended by stating that if Plaintiff still wanted to discontinue the medication, she needed to fill out specific paperwork.  However, even if she chose to stop the medication, nurse Katie stated that Plaintiff would remain on the "cardiac diet."  [*Id.* at 4-5].

It appears that Plaintiff was put on a cardiac diet on November 10, 2023, due to her hypertension.  [*Id.* at 2].  At some point, Plaintiff obtained a copy of the "normal food schedule and her specifically created diet schedule" which "disclosed the changes of the particular food items" for the cardiac diet.[5]  [Doc. 1 at 6].  Plaintiff states that she did not want to be on the diet, but that nurse Katie refused to take her off.  [*Id.* at 7].

Plaintiff filed "multiple complaints" about the diet.  [Doc. 1 at 6]; *see also* [Doc. 1-1 at 3, 6].  She alleges that on November 23rd, her food tray "wasn't being supplemented properly," but she does not state what was improper.  [Doc. 1 at 6].  The only food-tray change that Plaintiff provides any details about occurred on January 21, 2024.  Plaintiff filed a grievance complaining that her breakfast sausage on that date had been replaced with bananas that were cold, partly frozen, black, and slimy.  [*Id.* at 7]; [Doc. 1-1 at 6].  Plaintiff protested that the sausage was "not noted as an item that was to be changed."  [*Id.*]  The "HC" or Head Cook—who Plaintiff names as defendant Brandy Unknown—responded to the request form by stating that frozen bananas

---

[4] Plaintiff states that this letter came from "Dr. Keddy," a medical doctor hired through "Corizon" by St. Francois County Sheriff's Department.  [Doc. 1 at 6].  However, the letter is clearly from "Katie, RN," *see* [Doc. 1-1 at 5], and there is no Dr. Keddy named as a defendant in this matter.

[5] Plaintiff stated that she would supplement her pleadings with a copy of her cardiac diet schedule, but as of the date of this Order, no such supplement has been received by the Court.  *See* [Doc. 1 at 6].  Regardless, knowing the cardiac diet schedule would not alter the Court's analysis or opinion in this matter.

were used instead of fresh bananas because fresh bananas go bad too quickly.  The Head Cook also reminded Plaintiff that her meal plan had been approved by her doctor.  [*Id.*]

Plaintiff states that after she filed this grievance in January 2024, the Head Cook "made several threats of retaliation" and she said that "she 'will not take anymore complaints'" from Plaintiff.  [Doc. 1 at 7].  Plaintiff alleges that this caused her "much fear" of "unnecessary diet substitutions."  [*Id.*]  In the Complaint section regarding exhaustion of administrative remedies, Plaintiff states that the Head Cook threatened her by saying: "Now if you wanna keep complaining we can start serving you a peanut butter sandwich w/ beans for every meal, or we can try meal loaf."  [*Id.* at 11].

## II.    Grievance Filing Limitations

Plaintiff also alleges unconstitutional limitations on her ability to file grievances at the St. Francois Detention Center.  [Doc. 1 at 8].  Plaintiff states that she filed a grievance against Lieutenant Hardy White on April 1, 2024, complaining that White told her that she should not ask the Detention Center staff for their full names or badge numbers.  [Doc. 1-1 at 7]. Apparently, this grievance was prompted by Plaintiff's "Aunt using Christina Rayoum's name on the phone."  [*Id.*]  Defendant White responded to the grievance by stating that inmates should not refer to staff by their first names, that their names should not be given out to people, and that they should not be receiving calls from people they do not know.  [*Id.*]

By June 11, 2024, Plaintiff reports that her "high volume of complaints" provoked lieutenant Christina Rayoum—a grievance and request form officer—to restrict Plaintiff's access to grievance forms to only one day a week (Tuesdays) and to a limited number of forms each week.  [Doc. 1 at 8 (indecipherable number of complaint forms allowed each week)].  After those restrictions, Plaintiff filed a "general question" inmate request form, complaining that

restrictions on her ability to ask questions violates her First Amendment free speech rights.
[Doc. 1-1 at 9].

## Discussion

After careful review and liberal construction of the pleadings, the Court finds multiple
reasons why this case must be dismissed for failure to state a claim upon which relief may be
granted.  *See* 28 U.S.C. § 1915(e)(2)(B).

First, for all of Plaintiff's claims except those brought under the First Amendment, the
Complaint fails to state an actionable claim under the Prison Litigation Reform Act ("PLRA")
for compensatory damages.  The PLRA states: "No Federal civil action may be brought by a
prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury
suffered while in custody without a prior showing of physical injury or the commission of a
sexual act."  42 U.S.C. § 1997e(e); *see also McAdoo v. Martin*, 899 F.3d 521, 525 (8th Cir.
2018) ("We interpret the PLRA to require more than a de minimis physical injury."); *but see
Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004) (holding prisoners may maintain actions for
alleged First Amendment violations without claiming a physical injury).

Plaintiff here does not allege that she suffered any physical injury.  Plaintiff failed to
include the page of the Court's form § 1983 complaint for listing injuries suffered.  *See* [Doc. 1
at 3, 9 (skipping from section "II. Statement of Claim" to "IV. Relief" and missing the Court's
form page 4 which includes "III. Injuries")].  The only injuries Plaintiff mentions are "much
fear" from threatened food substitutions, and limitations on her ability to file grievances but no
actual injury as a result of the filing limitations.  As Plaintiff has claimed no physical injury
arising out of the alleged violations of her constitutional rights, the PLRA bars recovery of
compensatory damages for all claims except those brought under the First Amendment.

Second, the Court finds that the Complaint does not comply with the Federal Rules of Civil Procedure. Even self-represented litigants are obligated to abide by these Rules. *McNeil v. United States*, 508 U.S. 106, 113 (1993). Plaintiff cannot assert in a single lawsuit, claims against different defendants that are related to events arising out of different occurrences or transactions. *See* Fed. R. Civ. P. 20(a)(2) (governing joinder of defendants). "Unrelated claims against different defendants belong in different suits, ... [in part] to ensure that prisoners pay the required filing fees - for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). In Plaintiff's Complaint, she asserts two unrelated claims against different defendants: claims of a forced cardiac diet that provides improper food substitutions and claims regarding restricted access to grievance filings. These claims are improperly brought in the same suit in violation of the Federal Rules.

However, even if these deficiencies were not at issue, Plaintiff's Complaint would still be subject to dismissal because it fails to provide sufficient factual support to state a § 1983 claim against any named defendant. As explained in detail below, this case will be dismissed as to all named defendants for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B).

## I.      Defendant St. Francois County Detention Center and Official Capacity Claims

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). To state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation of that right was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Plaintiff's Complaint is subject to dismissal as to defendant St. Francois County Detention Center because jails and local government detention centers are not suable entities under 42 U.S.C. § 1983. *Owens v. Scott Cnty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (affirming dismissal of § 1983 claim because "county jails are not legal entities amenable to suit."); *De La Garza v. Kandiyohi Cnty. Jail, Corr. Inst.*, 18 F. App'x 436, 437 (8th Cir. 2001) (holding that neither county jail nor sheriff's department is a suable entity under § 1983); *see also Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (holding that departments or subdivisions of local government are "not juridical entities suable as such" under § 1983).

Furthermore, official capacity claims against individuals are actually claims "against the governmental entity itself." *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999); *see also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"). In this case, the five (5) individual defendants are all employees of St. Francois County. As such, in order for Plaintiff to prevail on her official capacity claims against these individuals, Plaintiff must establish St. Francois County's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016).

A local governing body, like the County, can be sued directly under § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018); *see also Marsh v. Phelps Cnty.*, 902 F.3d 745, 751 (8th Cir. 2018)

(recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same").

Here, Plaintiff has not alleged that St. Francois County has any unconstitutional policy or custom, or deliberately indifferent failure to train (related to the facts at issue in this case),[6] that makes it liable for the alleged violations of her constitutional rights.  There is no mention whatsoever of any policy or custom anywhere in the Complaint allegations.  Specifically, there are no allegations regarding a pattern of similar constitutional violations by other St. Francois County employees.  In fact, Plaintiff seems to assert the opposite when she alleges that she is treated differently regarding grievance-filing limitations than other inmates.  *See* [Doc. 1 at 8].

Therefore, defendant St. Francois County Detention Center must be dismissed because the County Detention Center is not a suable defendant under § 1983.  To the extent Plaintiff intended to name the County itself—and because Plaintiff's official capacity claims against the individual defendants are actually claims against the County—the Complaint fails to allege an unconstitutional custom, policy, or failure to train related to the facts at issue in this case. Defendant St. Francois County Detention Center and Plaintiff's official capacity claims against the individual defendants must be dismissed.  *See Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

---

[6] The Court acknowledges that Plaintiff's Complaint does assert a failure to train or supervise, but this failure is in relation to the County Detention Center's treatment of Plaintiff's gender dysphoria and their general lack of acknowledgment of her gender.  [Doc. 1 at 8.]  As mentioned above, claims regarding Plaintiff's treatment for gender dysphoria and harassment concerning her gender are issues in Plaintiff's other civil litigation before the Court.  Any allegations relating to these claims should be brought in Plaintiff's other pending cases.

## II.      Defendant Nurse Katie Harris

Plaintiff asserts that defendant nurse Katie Harris refused her request to discontinue a cardiac diet and violated her "right to refuse [the] diet" as "a medical right."  [Doc. 1 at 7]. Plaintiff appears to be asserting that Harris's refusal to change her diet violated her Eighth Amendment protection from cruel and unusual punishment.

The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from deliberate indifference to serious medical needs.  *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012).  To prevail on an Eighth Amendment claim of deliberate indifference, a plaintiff must prove that she suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need.  *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019).  A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."  *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (quoted case omitted).

An inmate must demonstrate that a defendant's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care."  *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014) (quoted case omitted).  "[D]eliberate indifference requires a highly culpable state of mind approaching actual intent."  *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (quoted case omitted).  Allegations of mere negligence in giving or failing to supply medical treatment will not suffice.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Nor will a prisoner's "mere disagreement with treatment decisions" support a claim of deliberate indifference.  *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008).

Plaintiff's desire to discontinue a cardiac diet constitutes a disagreement with her medical provider's treatment decisions.  Plaintiff points to no serious medical need that has been

deliberately disregarded by defendant nurse Harris.  As the Supreme Court explained in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989): "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being" including providing "for his basic human needs – *e.g.,* food, clothing, shelter, medical care, and reasonable safety." *Id.* at 199-200.  The County has a duty of care for Plaintiff's well-being and nurse Harris is assuming responsibility for this care by providing Plaintiff with a cardiac diet, as part of Plaintiff's treatment for hypertension.

Plaintiff has not alleged sufficient facts to show that nurse Harris deliberately disregarded any serious medical need of Plaintiff's.  As such, the Court finds that Plaintiff fails to state a § 1983 claim against defendant Katie Harris.

### III.    Defendant Head Cook Brandy Unknown

Plaintiff alleges that Head Cook Brandy Unknown provided "improper," "questionable," and "incorrectly supplemented" food substitutions for her cardiac diet, and that when Plaintiff complained about them, Brandy threatened "unnecessary diet substitutions," including peanut butter sandwiches, beans, and meal loaf.  [Doc. 1 at 7, 11].  Liberally construing the Complaint, Plaintiff is alleging that Head Cook Brandy violated her Eighth Amendment right to avoid unconstitutional conditions of confinement and her First Amendment right to be free of retaliation.

#### a.   Conditions of Confinement Claim

The United States Supreme Court has determined that prisoners have a protected liberty interest in avoiding conditions of confinement that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  To establish a conditions of confinement claim under the Eighth Amendment, a

prisoner must demonstrate (1) that the alleged deprivation was "objectively, sufficiently serious" to result in the "denial of the minimal civilized measure of life's necessities," and (2) that the defendant whose act or omission caused the alleged constitutional deprivation behaved with "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations and citations omitted); *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004). With respect to the "civilized measure of life's necessities," prison officials are required to ensure that inmates receive adequate clothing, food, shelter, and medical care. *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998) (citing *Farmer*, 511 U.S. at 832).

Undoubtedly, prisoners have a right to nutritionally adequate food under the Eighth Amendment. *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992). However, Plaintiff here alleges only that "improper" food substitutions were made by defendant Head Cook Brandy and that on one occasion, she was served a cold, partly frozen banana instead of breakfast sausage. Plaintiff does not present any evidence that the food substitutions made by Brandy were nutritionally inadequate, prepared in a manner that was dangerous to Plaintiff's health, or that Plaintiff's health suffered as a result.[7] *Id.* (affirming dismissal of prisoner's Eighth Amendment claim regarding "cold food, often contaminated with foreign objects" where plaintiff "presented no evidence that the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food").

The facts alleged in the Complaint do not support a claim that Head Cook Brandy's food substitutions were a sufficiently serious denial of life's necessities or that Brandy acted with deliberate indifference to Plaintiff's health. As such, Plaintiff fails to state an Eighth Amendment claim against Head Cook Brandy Unknown.

---

[7] Even if Plaintiff had alleged that she lost weight due to the cardiac diet, this would not necessarily indicate that the diet was nutritionally inadequate. As noted in the letter to Plaintiff from nurse Harris, Plaintiff needs to lose weight so that her BMI is no longer in the "overweight" range, as part of her treatment for hypertension. [Doc. 1-1 at 4].

### b. Threats and Retaliation Claim

Plaintiff's allegations of threats and retaliation by Head Cook Brandy also fail to state a claim. The Constitution does not guard against all intrusions on one's peace of mind. *King v. Olmsted Cnty.*, 117 F.3d 1065, 1067 (8th Cir. 1997). "Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim." *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992); *see also McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) ("Verbal threats and name calling usually are not actionable under § 1983"). In other words, fear or emotional injury resulting "solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest." *King*, 117 F.3d at 1067 (citations omitted). The Eighth Circuit has held "that a threat constitutes an actionable constitutional violation only when the threat is so brutal or wantonly cruel as to shock the conscience, or if the threat exerts coercive pressure on the plaintiff and the plaintiff suffers the deprivation of a constitutional right." *Id.* (internal citations omitted).

In this case, Plaintiff only describes one threat by Head Cook Brandy—a threat that Plaintiff will be served peanut butter sandwiches, beans, and meal loaf. This threat of food substitutions is not "so brutal or wantonly cruel as to shock the conscience." *Id.* Furthermore, this single incident of threatened food substitutions (that do not appear nutritionally inadequate), with no resulting injury to Plaintiff, is not enough to state a § 1983 claim. *See Turner v. Mull*, 784 F.3d 485, 492 (8th Cir. 2015) (finding a one-time, one-sentence threat did not amount to a constitutional violation where the isolated threat resulted in no injury).

As to Plaintiff's allegations of retaliation, the right to be free from retaliation for availing oneself of the grievance process is clearly established in the Eighth Circuit. *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) (citing *Nelson v. Shuffman*, 603 F.3d 439, 449-50 (8th Cir. 2010)). To state a claim for First Amendment retaliation, a plaintiff must assert that: (1) she

engaged in a protected activity, (2) defendants took adverse action against her that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Gonzalez v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020) (internal citation omitted). Both filing a prison grievance and filing an inmate lawsuit are protected First Amendment activities. *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007).

In this case, Plaintiff filed grievances complaining about food substitutions made by Head Cook Brandy, but Plaintiff does not describe any retaliatory actions taken by Brandy in response to the filings. To the extent Plaintiff is alleging that the threats of further food substitutions chilled her grievance filings, the evidence before the Court does not support this assertion. Plaintiff admits that she continued to file so many grievances at St. Francois County Detention Center that eventually restrictions were put on her filings. Overall, Plaintiff provides no evidence that Brandy's actions would deter a person of ordinary firmness from continuing to engage in First Amendment protected activity. *See Gonzalez v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020).

As Plaintiff presented no evidence that the cardiac diet provided by Head Cook Brandy was nutritionally inadequate nor that Brandy's threats of additional food substitutions chilled further grievance filings, the Complaint fails to state a § 1983 claim against Head Cook Brandy Unknown.

## IV.    Lieutenant Christina Rayoum

Plaintiff alleges that "grievance and request form officer" Christina Rayoum violated her rights when she restricted Plaintiff to only filing a limited number of grievances and only on one day of the week. [Doc. 1 at 8]. Plaintiff does not assert that she suffered any injury as a result of the limitations on filings, but she does argue that "others were capable of filing as pleased any

day." [*Id.*] Plaintiff appears to be asserting claims against Rayoum based on equal protection and a constitutional right to file institutional grievances.

### a. Equal Protection Claim

The Equal Protection Clause provides, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause generally requires the government to treat similarly situated people alike." *Klinger v. Dep't of Corrs.*, 31 F.3d 727, 731 (8th Cir. 1994). However, unequal treatment of "those who are entitled to be treated alike[] is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination." *Batra v. Bd. of Regents of Univ. of Neb.*, 79 F.3d 717, 721 (8th Cir. 1996) (quoting *Snowden v. Hughes*, 321 U.S. 1, 8 (1944)). As such, the first step in an equal protection case is determining whether the plaintiff has demonstrated that he or she was treated differently than others who were similarly situated. *In re Kemp*, 894 F.3d 900, 909 (8th Cir. 2018). Unless the plaintiff can make a threshold showing that he or she is similarly situated to those who allegedly received favorable treatment, the plaintiff does not have a viable equal protection claim. *Id*. In addition, a plaintiff's allegations must show purposeful discrimination – it is not enough for a plaintiff to characterize an official's decision as "unequal." *Snowden*, 321 U.S. at 10.

In this case, Plaintiff does not provide any argument in support of her equal protection claim, except to say that she was treated differently than others. The facts alleged do not establish that Plaintiff was treated differently then any other similarly situated inmate by defendant Rayoum. Plaintiff points to no other inmate who also filed a "high volume of complaints," but received no limitations on their filings by Rayoum. Plaintiff fails to make the required threshold showing that she is similarly situated to anyone who received favorable treatment. Also, nothing in the Complaint indicates intentional or purposeful discrimination on

the part of Rayoum.  As such, Plaintiff fails to state a viable equal protection claim against defendant Christina Rayoum.

### b.  Right to Seek Redress Claim

To the extent Plaintiff is also arguing that Rayoum violated her constitutional right to file grievances, this claim also fails.  There is no federal constitutional right to a prison grievance procedure, and neither state law nor state policy creates one.  "A grievance procedure does not confer any substantive constitutional right upon prison inmates."  *Bostic v. Babich*, No. 1:07-cv-14-ERW, 2008 WL 906801 at *7 (E.D. Mo. Apr. 3, 2008) (internal quotation omitted).  Therefore, if a state elects to provide a grievance mechanism, violations thereof will not give rise to a § 1983 claim.  *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (prison officials' failure to process grievances, without more, is not actionable under § 1983).  In addition, the Eighth Circuit has recognized that "prisoners must understand that if they abuse the system by repeatedly filing ill-founded grievances, reasonable limitations may be placed on their access to the procedure."  *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) (citing *In re Tyler*, 839 F.2d 1290 (8th Cir. 1988) (per curiam) (affirming order of district court limiting petitioner to one filing per month)).

In this case, Plaintiff admits to having filed numerous grievances in abuse of the system.  As such, Rayoum placed reasonable limitations on her access.  Because Plaintiff has no constitutional right to a prison grievance system, Plaintiff fails to state a § 1983 claim based on these allegations against defendant Rayoum.

## V.    Lieutenant Hardy White

It is unclear what claims Plaintiff is attempting to assert against defendant Hardy White, as he is not mentioned in the allegations of the Complaint.  Plaintiff did attach a grievance filing exhibit where she complained that Hardy informed her not to request the names or badge

numbers of Detention Center staff. *See* [Doc. 1-1 at 7]. Liberally construing the allegations of the Complaint, the Court cannot discern how this statement establishes the foundation for any constitutional violation by defendant White, as required for a § 1983 claim. Because Plaintiff fails to allege that defendant White is casually linked to, or directly responsible for, any violation of her rights, this claim must fail. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights). Defendant Hardy White will be dismissed because the Complaint fails to state a claim for relief against him.

## VI.   Lieutenant Randy Camden

Similarly, Plaintiff fails to state a claim against defendant Randy Camden because Plaintiff never asserts any wrongdoing against Camden in her Complaint. Plaintiff does not mention Camden in the facts alleged and never asserts that Camden is causally linked to, or directly responsible for, violating her rights. *Id.* Plaintiff merely lists Camden as a defendant without alleging, with any specificity, that Camden did anything to her.[8] As a result, the Complaint is legally frivolous and fails to state a claim upon which relief may be granted as to defendant Randy Camden. *See also Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints"); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003) (affirming dismissal of *pro se* complaint against defendants who were merely listed as defendants in the complaint and there were no allegations of constitutional harm against them).

---

[8] Based on the Court's review of the exhibits filed by Plaintiff, it appears that Camden may have responded to a grievance filed by Plaintiff about access to female undergarments. *See* [Doc. 1-1 at 8]. As stated previously, this claim is being litigated in one of Plaintiff's other pending civil cases in this Court and is not properly raised herein.

**Conclusion**

Plaintiff's motion to proceed *in forma pauperis* is granted and an initial partial filing fee of $24.75 is accessed against her.  However, based on a review of the pleadings under 28 U.S.C. § 1915, this case is dismissed for failure to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915(e)(2)(B).  Defendant St. Francois County Detention Center is not a suable defendant under 42 U.S.C. § 1983, and Plaintiff fails to state sufficient facts to support a claim against any of the individual defendants.  This case will be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 2] is **GRANTED.**  *See* 28 U.S.C. § 1915(a)(1).

**IT IS FURTHER ORDERED** that the Plaintiff shall pay an initial filing fee of $24.75 within **thirty (30) days** of the date of this Order.  Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.  *See* 28 U.S.C. § 1915(b)(1).

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the Complaint as to any defendant because the Complaint fails to state a claim upon which relief can be granted.  Plaintiff's claims against defendants St. Francois County Detention Center, Brandy Unknown, Christina Rayoum, Katie Harris, Randy Camden, and Hardy White are **DISMISSED without prejudice**.  *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

- 22 -

Dated this 7th day of January, 2026.

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE